FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 11, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MISTY O.,<br><br>        Plaintiff,<br><br>  vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant.<br>_____ | No. 1:18-CV-3113-LRS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA* |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 15).

## JURISDICTION

Misty O., Plaintiff, applied for Title II Social Security Disability Insurance benefits (SSDI) on November 7, 2014. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on March 29, 2017, before Administrative Law Judge (ALJ) M.J. Adams. Plaintiff testified at the hearing, as did Vocational Expert (VE) Michael Swanson and the Plaintiff's husband, Gary Olivas. On May 19, 2017, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. Plaintiff alleges disability since November 1, 2014, on which date she was 47 years old. At the time of the administrative hearing, Plaintiff was 49 years old. Plaintiff's date last insured for Title II SSDI benefits is December 31, 2019. Plaintiff has past relevant work experience as a bank teller, collections clerk, assistant retail manager, retail manager, and marketing director.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749

F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues: 1) the ALJ erred in his evaluation of medical opinion evidence; 2) the ALJ failed to offer specific, clear and convincing reasons for discounting Plaintiff's symptom testimony; and 3) the ALJ failed to offer legally sufficient reasons for rejecting lay witness statements of Plaintiff's husband, daughter, and former employer.

## DISCUSSION
### SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged

in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 4**

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments, those being fibromyalgia, obesity, depressive disorder and anxiety disorder; 2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except she can only occasionally climb ramps, stairs, ladders, ropes and scaffolds; she can occasionally crawl; she can frequently balance, stoop, kneel and crouch; she must avoid concentrated exposure to extreme cold, humidity, and vibration; she can understand, remember, and carry out simple instructions; she can make judgments commensurate with the functions of unskilled work; she can respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required; she can deal with occasional changes in the work environment; and she can do work that requires no contact with the general public to perform the work tasks; 4) Plaintiff is unable to perform any of her past relevant work; but 5) there are other jobs existing in significant numbers in the national economy which the Plaintiff is capable of performing, including maid/housekeeper, courier and mail room clerk. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 5**

ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id.* "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### A. Drs. Lindgren and Hurtarte

Plaintiff established care with David A. Lindgren, M.D., in July 2014. Dr. Lindgren noted Plaintiff had a history of fibromyalgia and osteoarthritis and had been seeing a rheumatologist in Seattle. (AR at p. 434). In October 2014, Dr. Lindgren referred the Plaintiff to Juan Ruiz Hurtarte, M.D., at Waters Edge Pain Clinic. (AR at p. 498). In December 2016, Dr. Lindgren completed a "Fibromyalgia Medical Source Statement" in which he indicated that Plaintiff met the America College Rheumatology criteria for fibromyalgia. He opined Plaintiff could walk one city block without rest or severe pain; could sit 15 minutes at one time before needing to get up; could stand for five minutes before needing to sit or walk around; could sit less than two hours in an eight hour workday; could stand/walk less than two hours in an eight hour workday; would require a job allowing her to shift positions at will; would need to take unscheduled breaks during the workday, every hour for approximately 15 minutes during which she would need to lie down or sit quietly or walk; could rarely lift and carry less than 10 pounds; could never twist or climb ladders; rarely stoop, crouch or climb stairs; could grasp, turn or twist objects with her hands 1-5% of the time during an eight hour workday; perform fine manipulation with her fingers 1% of the time during an eight hour workday; use her arms to reach

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 6**

in front of her body 5% of the time during an eight hour workday; use her arms 1% of the time during an eight hour workday to reach overhead; and she would miss more than four days per month as a result of her impairments were she to be employed full-time. (AR at pp. 478-81). In a document dated January 4, 2017, Dr. Hurtarte indicated he concurred with Dr. Lindgren's assessment. (AR at p. 482).

The ALJ found the opinions of Drs. Lindgren and Hurtarte to be "extreme and inconsistent with the medical evidence of record including the claimant's activities of daily living." (AR at p. 29). According to the ALJ:

> Dr. Lindgren indicated that the claimant could rarely lift less than 10 pounds and never lift 10 or more pounds. Yet physical exams by Dr. Lindgren and Dr. Hurtarte consistently show full strength on exam. [Citations omitted]. Dr. Lindgren indicated that claimant could never twist. However, she drives. She would need to twist to get in and out of the car. One would also expect that she would need to twist at least slightly to perform daily activities such as getting up and moving from a table. Dr. Lindgren assessed a limitation of 1-5% for manipulative activities. Yet, the claimant is independent in her personal care such as dressing and bathing. Furthermore, the record shows that the claimant participates in various activities including Zumba, swimming and walking. These activities are inconsistent with Dr. Lindgren's assessed limitations. The exaggerated responses by these medical providers undermine the reliability of their opinions and take away from their value as being inconsistent with the claimant's activities of daily living.

(*Id.*).

The ALJ, instead, gave significant weight to Gordon Hale, M.D., the state agency medical consultant, who in July 2015, based on his review of the extant medical record, opined Plaintiff had the physical RFC ultimately adopted by the ALJ in his decision. (AR at p. 30). The ALJ found Dr. Hale's opinion was consistent with the physical exams and while Plaintiff had some noted tender points on exam, she had full strength of the upper and lower extremities and normal gait. (*Id.*). The ALJ also found Dr. Hale's opinion to be consistent with Plaintiff's daily living activities. (*Id.*).

In his capacity as the "Medical Consultant" (MC), Dr. Hale signed the

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 7**

"Disability Determination And Transmittal" related to Plaintiff's application for reconsideration. (AR at pp. 94-96). While the evidence of record considered by Dr. Hale appears to have included medical records from Drs. Lindgren and Hurtarte through June 2015 (AR at pp. 89-90), Dr. Hale obviously was unaware of the assessments offered by those other doctors dating from December 2016 and January 2017. What stands out to the court, however, is the notation in the "Disability Determination And Transmittal" that a consultative examination (CE) was required because "[t]he evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim," and a treating source was not contracted to perform the CE because purportedly there was no treating source to perform the CE. (AR at pp. 91-92).[1] At the time this "Disability Determination And Transmittal" was signed (July 2015), Drs. Lindgren and Hurtarte were clearly treating sources and Plaintiff had previously (in April 2015) undergone a psychiatric CE by Gregory D. Sawyer, M.D., Ph.D., who assessed Plaintiff's mental RFC. It is unclear why, notwithstanding the notation that a CE was required, Plaintiff was not referred for a CE to assess her physical RFC.[2] As such, this calls into question the ALJ giving

---

[1] This had also been noted in the "Disability Determination And Transmittal" regarding the initial denial. (AR at p. 78).

[2] It would have been the responsibility of the Disability Examiner (DE), in this case Tue Nguyen, to initiate requests for a consultative examination where medical evidence of record (MER) is not sufficient to make a determination of disability. Social Security Program Operations Manual Systems (POMS) DI 24501.001.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

significant weight to Dr. Hale's physical RFC assessment, particularly so considering the nature of fibromyalgia.

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). Symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." *Id*. at 590. Unusual about the disease is that those suffering from it have "muscle strength, sensory functions, and reflexes [that] are normal." *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001). "Their joints appear normal, and further musculoskeletal examination indicates no joint swelling." *Id*. The condition is diagnosed "entirely on the patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. "[T]here are no laboratory tests to confirm the diagnosis." *Id*. Indeed, fibromyalgia is diagnosed in part by evidence showing that another condition does not account for the Plaintiff's symptoms. Social Security Ruling (SSR) 12-2P at *3.

SSR 12-2P, issued in 2012 by the Social Security Administration (SSA), recognizes fibromyalgia as a valid basis for a finding of disability. SSR-12 recognizes that a diagnosis of fibromyalgia does not rely on X-rays or MRIs and that symptoms of the disease "wax and wane" in that a person may have "bad days and good days." *Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017), citing SSR 12-2P at *6. The ruling warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider a "a longitudinal record whenever possible." *Id*. Evaluating whether a claimant's RFC renders her disabled because of fibromyalgia requires construing the medical evidence in light of fibromyalgia's unique symptoms and diagnostic methods as described in SSR 12-2P. *Id*. at 662. Failure to do so constitutes error.

Here, the ALJ considered SSR 12-2P in determining the effects of fibromyalgia

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 9**

on the Plaintiff's other impairments, concluding the evidence did not establish that fibromyalgia exacerbated any of her other impairments to the degree necessary to meet or equal a listed impairment. (AR at p. 23). This, however, is the only explicit mention of SSR 12-2P in the ALJ's decision and it is otherwise not apparent that in determining Plaintiff's RFC, the ALJ construed the medical evidence in light of SSR 12-2P. One could reasonably surmise that the call for a consultative examination in the "Disability Determination And Transmittal" was a recognition of fibromyalgia's unique symptoms and diagnostic methods as described in SSR 12-2P.

Pursuant to SSR 12-2P, the normal and mild exam findings cited by the ALJ (AR at pp. 25-26) are not specific and legitimate reasons for discounting the opinions of Drs. Lindgren and Hurtarte, both of whom treated the Plaintiff for 2 and ½ years. Nor do the instances of Plaintiff's activity cited by the ALJ (AR at p. 28) undermine the doctors' opinions considering the "waxing and waning" of fibromyalgia symptoms and the necessity of considering a "longitudinal" record. There is no reason to doubt that Dr. Lindgren and Hurtarte considered the longitudinal record in assessing Plaintiff's limitations, whereas there is no indication the ALJ did so. The medical record contains just as many instances of the "waxing" of Plaintiff's symptoms. (AR at pp. 394, 408, 438-40, 445-46, 488-90, 507, 530-32, 549, 575 and 587).[3]

As a practical matter, the December 2016 assessment by treating source, Dr. Lindgren, and the concurrence therewith by treating source, Dr. Hurtarte, serve as the consultative examination with regard to Plaintiff's physical RFC deemed necessary

---

[3] The ALJ did not find that Plaintiff made inconsistent presentations depending on the doctor whom she was seeing and the record does not support such an assertion.

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 10**

by the July 2015 "Disability Determination And Transmittal" denying Plaintiff's application for reconsideration. The ALJ did not offer specific and legitimate reasons, supported by substantial evidence, to discount that assessment.

**B. Dr. Sawyer**

At the request of the SSA, Greg D. Sawyer, M.D., Ph.D., conducted a consultative psychiatric examination of the Plaintiff on April 10, 2015. Dr. Sawyer noted the Plaintiff was "an adequate historian and gives me an accurate, valid and reliable history so that I may complete this evaluation report." (AR at p. 407). He further noted that while Plaintiff did not identify diminished ability to think or concentrate, or a problem with indecision, he concluded those were significant issues for her. (AR at p. 408). Dr. Sawyer discussed the fact Plaintiff was terminated from her employment at Yakima Federal Savings and Loan on October 28, 2014, after being employed there for two years. The doctor found it "pertinent" that while in her first year, she received awards for her performance and the largest raise for a teller given in the history of the particular branch, in her second year she was making so many mistakes because she could not concentrate that her employer was forced to let her go. (AR at p. 409). In a statement dated December 18, 2016, Yakima Federal verified Plaintiff was terminated due to the large number of errors she was making and being absent from work over seven days a month. (AR at p. 275).

Dr. Sawyer observed that Plaintiff was "candid and cooperative" with the evaluation and there was no evidence she was "exaggerating symptoms or history." (AR at p. 410). Plaintiff was able to spell "WORLD" both forwards and backwards and could follow a three-step command (*Id.*), but she made errors in Serial 7 and Serial 3 calculations. (AR at p. 411). Dr. Sawyer diagnosed "[m]ajor depressive disorder, severe, recurrent without psychotic features in partial remission, secondary to medication" and "[a]nxiety disorder, NOS [Not Otherwise Specified]." (*Id.*).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 11**

According to the doctor:

> This claimant's level of functioning when it comes to calculations, abstraction, similarities and differences for someone who is relatively a high functioning person and particularly someone who has functioned in a profession that requires calculations, . . . is way below what it would be expected to be. The claimant herself describes her anxiety disorder as being her primary issue[,] but I suspect that her depression is quite severe even though it is now being at least partially treated by adequate psychiatric medications. The claimant would probably not benefit from seeing a mental health treatment individual in that she is now being treated for her depression as well as her anxiety[,] although it always possible that she would receive help from that. **The likelihood of improvement in the next 12 months is guarded based on how her physical issues progress.**

(AR at pp. 411-12)(emphasis added).

It is noted that SSR 12-2P provides two sets of criteria for diagnosing fibromyalgia. A component of the second set of criteria is "manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." SSR 12-2P at *3.

Dr. Sawyer identified several different areas of functioning as to which he opined the Plaintiff would have "difficulty:" 1) attempting to understand, carry out and remember complex and one or two-step instructions "because of her difficulty with abstraction and calculation which implies difficulty balancing different things in her head;" 2) sustaining concentration and persistence in work-related activity at a reasonable pace; and 3) attempting to deal with the usual stresses encountered in the workplace. (AR at pp. 412-13).

The ALJ gave "partial" weight to Dr. Sawyer's opinion. (AR at p. 29). According to the ALJ, Dr. Sawyer's opinion was "partially consistent with the medical evidence of record" for the following reasons:

> The claimant displayed some difficulty with serial three and seven subtractions. Yet, she had no difficulty spelling the word "world" backward or performing a three-step task. Treatment notes show stable mood and anxiety with

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

> medication. In addition, mental status exams show good attention and thought process. As noted, the claimant continues to drive, which demonstrates an ability to sustain concentration.

(*Id.*).

Notwithstanding Plaintiff's ability to spell "world" backwards and follow a three step command, Dr. Sawyer nevertheless concluded Plaintiff would have difficulty understanding, carrying out and remembering complex and one or two-step instructions, and have difficulty sustaining concentration. The ALJ offered no explanation why there was any inconsistency and there is no other opinion in the record from a different psychiatrist or psychologist. Dr. Sawyer did not use the word "stable" to describe Plaintiff's anxiety and depression. He suggested she might benefit from mental health treatment (beyond medication management) and he acknowledged that any improvement in symptoms depended on the progression of physical issues. As the opinions from Drs. Lindgren and Hurtarte make clear, there was no improvement in Plaintiff's physical condition and indeed, there had likely been regression in December 2016/January 2017 when those opinions were given. The record establishes that Plaintiff's mental condition "waxes and wanes" along with her physical condition. (AR at pp. 415, 417-18, 420, 422, 485, 488-90, 530-32, 534-36, 544, 547, 553 and 559).

Because there is no contradictory psychiatric or psychological opinion in the record, the ALJ was obliged to provide "clear and convincing" reasons based on substantial evidence in the record to discount Dr. Sawyer's opinion. The ALJ failed to do so.

**PLAINTIFF'S REPORTING OF SYMPTOMS AND LIMITATIONS**

As discussed above, the "waxing and waning" of symptoms reported by Plaintiff over the course of the medical record are consistent with a diagnosis of

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 13**

fibromyalgia and corroborated to the extent possible by the clinical findings of the treating and examining providers. Plaintiff's pain complaints do not exceed the "objective medical evidence of record," as asserted by the ALJ (AR at pp. 25-26), because most of that evidence (e.g.,, normal neurological examinations, normal imaging results, and normal physical examinations including normal range of motion, etc.) is irrelevant to a fibromyalgia diagnosis. Furthermore, while medical evidence is a relevant factor in determining the severity of a claimant's impairments, subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found the record demonstrated Plaintiff was more functional than she alleged due to certain activities (swimming, walking and Zumba) the Plaintiff was doing or attempting to do in July 2014, November 2014, August 2015, September 2015, and February 2016. (AR at p. 28). Plaintiff's performance of these activities, or her attempt to perform them, is consistent with the "waxing and waning" of fibromyalgia symptoms and the "bad days and good days" experienced by those afflicted with the disease. (AR at pp. 27-28). Furthermore, these activities appear to have been undertaken at the direction and/or with the approval of treating providers who deemed it beneficial to the Plaintiff in combating her fibromyalgia symptoms. (AR at pp. 390, 396, 499).

The ALJ noted that although Plaintiff alleged being unable to work since November 2014, she received unemployment benefits through the second quarter of 2015. (AR at pp. 28 and 182). The ALJ also noted, however, that Plaintiff indicated to Dr. Hurtarte in November 2014 that she was looking for something part-time with a slower pace to reduce her stress level. (AR at pp. 28 and 507). The Ninth Circuit has held that "[c]ontinued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." *Ghanim v. Colvin,*, 763 F.3d 1154, 1165 (9th Cir. 2014). The circuit has

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 14**

not, however, found continued receipt of unemployment benefits is a clear and convincing reason sufficient alone to reject a claimant's testimony. Furthermore, the Ninth Circuit has held that receipt of unemployment benefits will undermine a claimant's alleged inability to work full-time only when the record shows the claimant held herself out as available for full-time work. *Carmickle v. Commission of Social Security Administration*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). Other than applying for unemployment benefits after she was laid off by Yakima Federal, there is nothing in the record indicating Plaintiff sought full-time work. Indeed, the evidence of record is she sought only part-time work that would accommodate the impairment which resulted in her termination from Yakima Federal. See *Torres v. Colvin*, 2017 WL 1437584 at *13 (D. Ariz. 2017)("Where the uncontested record shows that Plaintiff was laid off as a direct result of her impairment, and was unable to find work that would accommodate her impairment, the Court cannot conclude that Plaintiff's brief and unsuccessful attempt to find work constitutes a clear and convincing reason for rejecting her testimony").

      Where, as here, the Plaintiff has produced medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014); *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014). The reasons offered by the ALJ were not "clear and convincing." None of Plaintiff's treating and examining medical providers questioned her credibility and indeed, Dr. Sawyer specifically emphasized her credibility. Plaintiff's complaints about her symptoms and limitations were corroborated not only by her former employer (Yakima Federal), but also by her husband (AR at pp. 59-65) and her daughter (AR at pp. 223-30). Finally, before she was terminated from Yakima Federal, Plaintiff had worked fairly consistently over a nearly 20 year period (AR at pp. 203-14 ), a fact that

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

even the ALJ specifically acknowledged at the hearing (AR at p. 48). Among the factors relevant to assessing a claimant's credibility are the claimant's work record and testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002).

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Id.*, citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id.* at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 16**

law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id.*, quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied- ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is disabled- the court has discretion to depart from the ordinary remand rule and remand for an immediate award of benefits. *Id.* But even when those "rare circumstances" exist, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Id.* at 1102, quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

Here, the ALJ failed to offer legally sufficient reasons for rejecting the opinions of Drs. Lindgren and Hurtarte regarding Plaintiff's physical RFC, and in giving only partial weight to the opinion of Dr. Sawyer regarding Plaintiff's mental RFC. The ALJ also provided insufficient reasons for rejecting Plaintiff's allegations concerning her symptoms and resulting exertional and non-exertional limitations. There are no outstanding issues to resolve and further administrative proceedings would not be useful. Presented with a hypothetical that essentially incorporated the physical and mental limitations opined by the treating and examining medical providers, the VE testified that competitive employment would be precluded. (AR at p. 71). There is no question the Plaintiff is disabled.

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 14) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 15) is **DENIED**. The Commissioner's decision is **REVERSED**.

Pursuant to sentence four of 42 U.S.C. §405(g), this matter is **REMANDED** for immediate payment of Title II SSDI benefits to the Plaintiff based on an onset

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 17**

date of November 1, 2014.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and **close the case**.

**DATED** this ___11th___ day of March, 2019.

*s/Lonny R. Suko*
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 18**